THE STATE OF OHIO, APPELLANT, *v.* PARRA, APPELLEE.

[Cite as State v. Parra (1980), 61 Ohio St. 2d 236.]

(No. 79-425—Decided February 20, 1980.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Michael S. Nolan,* for appellant.

*Mr. Kenneth A. Bossin,* for appellee.

DOWD, J. The initial question before us is whether the defendant preserved an objection to the trial court's decision not to submit any lesser included offenses beyond those submitted to the jury.

Crim. R. 30 places upon the defendant the responsibility to object to the failure of the court to instruct on a lesser included offense, "stating *specifically* the matter to which he objects and the grounds of his objection." Failing to object deprives the defendant of the right to assign as error the failure. *State* v. *Roberts* (1976), 48 Ohio St. 2d 221, 225; *State* v. *Lane* (1976), 49 Ohio St. 2d 77.

The philosophy embraced by Crim. R. 30 and its application was summarized by the late Chief Justice C. William O'Neill, in *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 116-117, where he opined:

"This court need not address this proposition of law as the appellant failed to object to the jury instructions. * * * This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. * * * 'Any other rule * * * would relieve counsel from any duty or responsibility to the court and place the entire responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel which enjoins upon counsel the duty to exercise diligence and to aid the court rather than by silence mislead the court into commission of error.' See Crim. R. 30."

The request of the defendant for a submission of additional lesser included offenses was, as to negligent assault,

R.C. 2903.14,[1] specific, and as to assault, R.C. 2903.13,[2] at best, vague. The response of the trial court clearly indicated that it understood the request to be limited to a request for an instruction on negligent assault. In the face of the trial court's response, no attempt was made by the defendant to enlighten the court that the request included the crime of assault. We hold there was not a proper objection to the omission from the charge of an instruction on the lesser included offense of assault so as to preserve the issue on appeal, given the mandate of Crim. R. 30 to state with specificity an objection to the jury charge.

The defendant abandoned his request for an instruction on negligent assault. After the trial court overruled the request for such an instruction, the defendant then subsequently objected to an instruction on *any* offense lesser to the indicated offense of attempted murder. We hold that a defendant may not assign as error the trial court's failure to submit an instruction on a lesser included offense when, after having initially requested such an instruction, the defendant subsequently objects to the giving of instructions as to any lesser included offenses. To hold otherwise would permit a party to advance mutually exclusive objections, and thereafter on appeal choose between the two with impunity.

The defendant argues that the trial court's failure to instruct on assault and negligent assault was, in any event, plain error. We disagree.

The responsibility of the trial court with respect to lesser included offenses where self-defense is claimed was set forth in *State* v. *Nolton* (1969), 19 Ohio St. 2d 133.

*Nolton* and its progeny[3] require that where the defendant is charged with a homicidal or physical assault-type crime and defends on a claim of self-defense, a charge on a lesser includ-

---

[1] R.C. 2903.14(A) provides:

"(A) No person shall negligently, by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code, cause physical harm to another."

[2] R.C. 2903.13 (B) provides:

"No person shall recklessly cause serious physical harm to another."

[3] See *State* v. *Fox* (1972), 31 Ohio St. 2d 58, 63; *State* v. *Long* (1978), 53 Ohio St. 2d 91, 99; *State* v. *Jenkins* (1976), 48 Ohio App. 2d 99, 104; and *State* v. *Osburn* (1976), 52 Ohio App. 2d 146, 148.

ed offense is both warranted and required, not only for the benefit of the state, but for the benefit of the accused if the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction on a lesser included offense.

The premise for contending that the jury should have been instructed on the lesser included offenses of assault and negligent assault is that the jury could reasonably have found that the defendant *unintentionally* wounded Williams, but that in doing so, he either "recklessly caused serious physical harm" or "negligently caused physical harm by means of a deadly weapon."

The defense presented appeared to sound in self-defense. The claim of self-defense first appeared in the defendant's opening statement[4] and was repeated during the defendant's closing argument.[5] In between the opening statement and closing argument the defendant testified and contended that he fired the weapon at the ground without aiming at Williams because Williams was going to jump him. In one exchange on direct examination, the defendant appeared to claim that the shooting was unintentional and, thus, accidental, even

---

[4] Counsel for defendant declared in his opening statement:

" * * * That he did have a conversation, that he left when he was asked to leave, but that Mr. Williams wouldn't let him leave without causing any problems. That he instigated this, and that he followed him outside and kept pushing him. Mr. Parra had only one alternative, and that was to defend himself, and in defending himself, I would anticipate the evidence will show that he fired a gun, and that he fired the gun at the feet of Mr. Williams to stop him from coming at him. If he wanted to kill him, as the Prosecutor indicated, he was only ten feet away and he could have put the gun up and shot him in the chest, but instead he didn't. He fired into the ground.

"I think the evidence would show that Mr. Parra doesn't know whether he hit Mr. Williams or whether the bullet ricochetted off the cement, and that the only thing he was doing was defending himself. He meant no harm to Mr. Williams, but he wanted Mr. Williams to stop attacking him, stop hitting him, stop pushing him and let him leave as he tried to do when he left the house."

[5] In his closing argument, counsel for the defendant stated:

" * * * The testimony from both Mrs. Williams and Mr. Parra was that he fired at the ground. He fired at the ground, because this man kept coming at him, and he wouldn't stop and he was in fear. He was in fear of being hurt by this man. He fired into the ground to stop this man from coming at him. If he wanted to stop him permanently, he would have shot him in the chest. He could have shot him in the head. He could have shot him in the arm or stomach."

though he pulled the trigger five times and expelled three bullets.[6]

The jury instruction on self-defense indicates the trial court concluded that the defendant was defending on the basis that he had been justified in *intentionally* shooting Williams rather than on the basis that he had *unintentionally* wounded Williams.

The defendant did not object to the self-defense instruction which included the declaration, "The defendant must also have believed it was necessary to shoot Thomas Williams to save himself from death or great bodily harm." Rather, the defendant urged the court to repeat its summary of the self-defense instruction because of the announced concern that the jury had been distracted when the instruction was given originally.

In sum, the defense, as summarized by the unchallenged jury instructions on self-defense, constituted a claim that the defendant was justified in intentionally shooting Williams. Such a claim is inconsistent with an unintentional shooting. Under such circumstances, the submission of instructions on lesser included offenses that might reasonably follow a finding that the shooting of the victim was unintentional is unwarranted, and the trial court did not err in refusing to instruct the jury in this regard.[7]

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, SWEENEY, LOCHER and HOLMES, JJ., concur.

W. BROWN, J., dissents.

DOWD, J., of the Fifth Appellate District, sitting for P. BROWN, J.

---

[6] "Q. When you fired the gun, did you intend to hit him with any of the bullets?

"A. No, no. Okay, Let me tell you how he probably got shot, okay. Like the gun wouldn't—okay—when I first started pulling the trigger, no bullets came out. Okay. It might have been two or three bullets in there, I don't know, but there wouldn't no bullets come out. When he didn't see the bullets come out for the first two clicks, that's when he came faster, and then, you know, I pulled the trigger some more and that's when that's when the bullets came out."

[7] Because of our holding, we neither address nor consider whether, otherwise, the defendant's testimony would have required an instruction on either assault or negligent assault.